UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA DWYER,

    Plaintiff,

v.

    Case No: 2:21-cv-12024
    Hon. Judith E. Levy
    Mag. Judge Kimberly G. Altman

MICHELLE HALL, Esq., Director;
CHARISSE LOWTHER, Department
Supervisor, SONORA HARDEN,
Manager; the above individuals are
sued in their individual and official
capacities,

    Defendants.
_____/

**PLAINTIFF'S OBJECTIONS TO THE
REPORT AND RECOMMENDATION**

Plaintiff files Objections to the Report and Recommendation (hereafter "Report") and requests that this Court rejects the Recommendation to dismiss the lawsuit for the reasons stated below.

I.   **Standard of Review**:

Pursuant to Fed.R.Civ.P. 72(b)(3), the district court is to review objections made to the Report and Recommendation *de novo*.

> *Resolving Objections.* The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*See also* 28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b)(1)-(3). This court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *See Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough that the court can squarely address them on the merits. *See Pearce*, 893 F.3d at 346.

## OBJECTIONS

**OBJECTION I:  Contrary to the Report, Plaintiff had a constitutional right to arrange legal visits with DB**.

The Juvenile Detention Facility severely restricted Plaintiff access to confidential legal visits with DB, who at first was not her client but then became her client. Legal visits are arranged by the attorney through the Juvenile facility and not by the client. See statements of facts in the Report, ECF No. 14, PageID.111-6.

Defendants had no clear policy as to how attorneys would arrange for confidential legal visits. *Id*. The Report states that "WCJDF now has a written policy for attorney visits at the facility which should provide the necessary clarification and

guidance regarding attorney visits." ECF No. 14, Page ID.138. The problem is that Defendants did not provide a copy of this written policy to Plaintiff's counsel until after the hearing on the dispositive motion. Plaintiff's counsel review of the new policy found that it was lacking in providing attorneys meaningful access at the juvenile facility. Further, the Court never reviewed this new policy to ensure that it would provide meaningful access by attorneys to their clients at the Juvenile facility.

Established case law as far back as 1981 recognized that the attorney-client privilege is the oldest of privileges known to the common law. *Upjohn v. U.S.*, 449 U.S. 383, 389 (1981). Further, the Supreme Court recognized in *Upjohn* that an attorney must be informed of all the facts to properly advice a client.

> The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant. See ABA Code of Professional Responsibility, Ethical Consideration 4–1:
>
> "A lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system. It is for the lawyer in the exercise of his independent professional judgment to separate the relevant and important from the irrelevant and unimportant. The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of his client not only facilitates the full development of facts essential to proper representation of the client but also encourages laymen to seek early legal assistance."
>
> *See also Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 393–394, 91 L.Ed. 451 (1947).

*Id*. at 390-91. The *Hickman* Court stated:

3

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

*Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947). Without confidential meetings arranged by Plaintiff, counsel could not become fully informed of the facts to advise her client.

It must be remembered that it is counsel that calls the police station and request a legal visit and not the confined person telling the police to arrange a legal visit. It is counsel that will contact the jail or prison and inform them that they want to meet with the confined person, whether a client or not, and no retainer is required before that visit is permitted. It is the attorney who will contact the prison or jail, and not the confined person, who tells prison officials to arrange a legal visit on such a day and such a time regardless of whether a legal retainer exists between the attorney and the prisoner. An attorney will visit with prisoners and detainees that are not his /her clients and these visits are arranged by the attorneys and are protected conducted by the attorney. *ACLU v. Livingston County* 796 F.3d 636, 647-48 (6th Cir. 2015). If the attorney possessed no right to arrange legal visit, then the jail or

4

prison staff could deny such visits. This would be especially so when the attorney was seeking to visit a potential witness. Without third party standing, an attorney could not bring an action when denied a visit with a potential witness.

Like the *Upjohn*'s Court, the Michigan Legislature has recognized that any attorney's communication with a client is protected.

> Any communications between attorneys and their clients, between members of the clergy and the members of their respective churches, and between physicians and their patients are hereby declared to be privileged and confidential when those communications were necessary to enable the attorneys, members of the clergy, or physicians to serve as such attorney, member of the clergy, or physician.

Mich. Comp. Laws Ann. § 767.5a. Therefore, both federal and state law recognizes that confidential communications are required during a legal visit.

These rights and privileges were extended to juveniles since 1967 with the Supreme Court decision *In Re Gault*, 387 U.S. 1 (1967). There the Court held that

> [t]he juvenile needs the assistance of counsel to cope with problems of law,[]to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child 'requires the guiding hand of counsel at every step in the proceedings against him.' Just as in *Kent v. United States, supra*, 383 U.S., at 561—562, 86 S.Ct., at 1057—1058, we indicated our agreement with the United States Court of Appeals for the District of Columbia Circuit that the assistance of counsel is essential for purposes of waiver proceedings, so we hold now that it is equally essential for the determination of delinquency, carrying with it the awesome prospect of incarceration in a state institution until the juvenile reaches the age of 21.[]

*Id.*, at 36–37 (footnotes omitted). There is no mention that the right to meet with a juvenile belongs singularly to the juvenile. Many times, the juvenile will not know that his family has retained counsel or counsel has been appointed so that s/he had the information to request counsel visit him or that the juvenile is entitled to confidential visits. The only person that can request the confidential legal visit is the attorney even according to the new policy of the Defendants.

**OBJECTIONS II: Contrary to the Report (ECF No. 14. PageID.125-7), Plaintiff had third-party standing to challenge the policy of the Juvenile facility**.

Plaintiff had third-party standing to challenge being denied legal visits, being denied confidential legal visit and telephone calls, and the reading of her legal mail.

> The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth* *129 v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In this case, we do not focus on the constitutional minimum of standing, which flows from Article III's case-or-controversy requirement. See *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Instead, we shall assume the attorneys have satisfied Article III and address the alternative threshold question whether they have standing to raise the rights of others. See *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 585, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).[2]
>
> * * *
>
> We have not treated this rule as absolute, however, recognizing that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another. But we have limited this exception by requiring that a party seeking third-party standing make two additional showings. First, we have asked whether the party asserting the right has a "close" relationship with the person who possesses the right. *Powers v. Ohio,* 499 U.S. 400, 411, 111 S.Ct.

> 1364, 113 L.Ed.2d 411 (1991). Second, we have considered whether there is a "hindrance" to the possessor's ability to protect his own interests. *Ibid.*

*Kowalski v. Tesmer*, 543 U.S. 125, 128–30 (2004).

Plaintiff had third-party standing in this matter since the filing of the complaint. First, Dwyer has a close relationship with DB as being his attorney. *Kowalski* recognized that an attorney-client relationship can meet this first prong if the issue being litigated involves the "invoking the rights of an existing client." *Id.*, at 131 (citation omitted). The Sixth Circuit held that to have an attorney-client relationship does not require that the attorney has filed an appearance with a court. *ACLU v. Livingston County* 796 F.3d 636, 647-48 (6th Cir. 2015).

The second prong from *Kowalski* is "whether there is a 'hindrance' to the possessor's ability to protect his own interests." *Supra*, 543 U.S. at130. DB is considered mentally ill. Complaint, ECF No. 1, paragraph 32. Defendants have not contested the claim of DB being mentally ill. Further, on a motion to dismiss all the factual claims by Plaintiff are taken as true." *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973) ("For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.").

The Sixth Circuit recently summarized the requirements for third party standing as follows:

> In deciding when not to apply the rule, the Court has considered two factual elements: The first is the relationship of the litigant to the person whose right he seeks to assert. If the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court at least can be sure that its construction of the right is not unnecessary in the sense that the right's enjoyment will be unaffected by the outcome of the suit. Furthermore, the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter. Elsewhere, the Court has described this test as requiring that the party asserting the right has a 'close' relationship with the person who possesses the right, and that there is a hindrance to the possessor's ability to protect his own interests.

*Smith v. Jefferson County Bd. of Sch. Comm'rs,* 641 F.3d 197, 208 (6th Cir. 2011) (internal citations and quotations omitted). Plaintiff met the above requirements of *Jefferson County Bd.*, in that, she is an attorney and sought to provide representation of D.B. at crucial stages of the juvenile proceedings, and that there are allegations that D.B. suffers from a mental illness that would prevent him from litigation the issues in this lawsuit.

Plaintiff has established the need for third-party standing to provide representation to DB and her access to him as to his pending juvenile matters.

**OBJECTION III: Contrary to the Report (ECF No. 14), *ACLU v Livingston County* was not based on a request for third-party standing but either on the standing of the ACLU or a recognition of third-party standing for the ACLU.**

In its Report, it is claimed that the "ACLU, suing on behalf of itself and the inmates…" (ECF No. 14, PageID.123; *see also id*, PageID.125.) However, a review of the Complaint filed in *ACLU v. Livingston County* shows that there was no request for third-party standing. (ECF No. 1) and no mention that the inmates were named parties. In the *Order* granting an injunction, there was no discussion of third-party standing. (ECF No. 12, 148-156.) The Report was wrong in claiming that the ACLU suit was brought on behalf of the inmates. The inmates at the jail were not named parties.

In the Sixth Circuit's opinion there is no mention that the ACLU was suing on behalf of the inmates confined at the jail. *ACLU v. Livingston County supra*, 796 F.3d at 641. The Sixth Circuit discussion of the processing of legal mail by those confined was based on cases brought by prisoners and not their attorneys. *Id*. at 643-44. However, the Sixth Circuit said that these decisions for prisoners

> "principles apply equally here. The ACLU's letters are precisely the type of communication that an attorney and an inmate would want kept confidential—the letters were addressed to a specific inmate, clearly marked "legal mail," and included the name and bar number of a licensed Michigan attorney. *Kensu,* 87 F.3d at 174 ("defin[ing] 'legal mail' to include delivery of legal materials to a prisoner, properly and clearly marked as legal materials."). Moreover, the substance of the letters indicated that the ACLU believed that the Jail's mail policy was unconstitutional, offered legal advice and assistance to the inmates, and noted the possibility of bringing a future legal action attacking the constitutionality of the Jail's mail policy. *See Sallier,* 343 F.3d at 874 ("legal mail" is correspondence that "impacts upon or has import for [a] prisoner's legal rights"). Attorneys from "legal assistance organization" like the ACLU (or

9

> any other attorney for that matter) must be able to send confidential communication *prior to* initiating a legal action or formally creating an attorney-client relationship. *See Muhammad,* 35 F.3d at 1083. Otherwise, attorneys will be unable to use the mail to communicate in confidence with inmates about the Jail's conditions of confinement or assess whether a constitutional violation at the Jail is occurring. Indeed, both attorneys and inmates have a strong interest in keeping communications relating to the initial investigative stages of a legal matter confidential such that the correspondence is not disclosed to Jail personnel or other inmates.

*Am. Civil Liberties Union Fund of Michigan v. Livingston Cnty.*, *supra*, 796 F.3d at 644. The Sixth Circuit then ruled that letters from the ACU were "'legal mail' as a matter of law" "because the ACLU letters at issue were marked "legal mail," bore the name and bar number of a licensed attorney and offered legal assistance and advice regarding the conditions at the jail, …" *Id*., at 645. Therefore, the ruling was not based on the rights of the inmates but based on the rights of the ACLU to communicate with potential clients. The same is true here, Dwyer sought to obtain access to her client who had mental illness and was not capable of litigating or requesting confidential legal visit with counsel. This is reflected in "Harden opened the letter [from Dwyer] and read its contents aloud to D.D. because she felt that D.B. would be unable to read the letter." (ECF No. 14, PageID.115.)

In further support that the ACLU case was not based on the rights of the inmates, the Report found that "[t]he Fourteenth Amendment claim was directed at the right of the ACLU…" (ECF No. 14, PageID.124.) Therefore, the Court found that the ACLU had its own standing to litigate the Jail's failure to deliver legal mail.

The Report then goes on to claim that the right Dwyer seeks to assert is her right of access to DB and not DB's right to access to her. (*Id.*) The Report goes on to state that in ACLU it "was the rights of the inmates to receive mail, and the ACLU was asserting both the rights of itself and of the inmates under a third-party standing. Theory, which Dwyer does not assert here." (*Id.*) In the complaint and its motion, the factual claims presented included what the Livingston County Jail had done and not done as to legal mail. There was no legal claim in the ACLU's complaint that the inmates' rights were violated (ECF No. 1, PageID.12-3.). Nor in the relief section of the complaint was there a request for relief for the inmates. (*Id.*, PageID.14.) The ACLU lawsuit was entirely about the rights of the ACLU to have contact with potential clients and not the confined people rights to have contact with the ACLU. The Report got it wrong.

## CONCLUSION

For the foregoing reasons, and in the interest of justice, Plaintiff respectfully requests that this Court rejects the Recommendation and allow this matter to be developed for trial.

Respectfully submitted,

/s/ Daniel E. Manville
Daniel Manville (P39731)
Attorney for Plaintiff
Director, MSU Law Civil Rights Clinic
P.O. Box 1570
East Lansing, Michigan 48824

(248) 890-4720
manvilled@law.msu.edu

## CERTIFICATE OF SERVICE

    I, Daniel E. Manville certify, under penalty of perjury, that on May 23, 2022, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

        /s/ Daniel E. Manville
        Daniel Manville (P39731)